## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AMIRA BLACK, | |
| Plaintiff, | |
| v. | |
| KYLE ENTERPRISES, INC. d/b/a McDONALD'S and KANDICE CORPORATION d/b/a McDONALD'S, | |
| Defendant. | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff AMIRA BLACK, by her attorneys, brings this action against KYLE ENTERPRISES, INC. d/b/a McDONALD'S and KANDICE CORPORATION d/b/a McDONALD'S, as follows:

## INTRODUCTION

1.     This is an employment discrimination action brought by Amira Black to redress violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., by the Kandice Corporation d/b/a McDonald's and Kyle Enterprises, Inc. d/b/a McDonald's.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1331.

3.     Venue is proper under 28 U.S.C. § 1391(b). Defendants reside in this judicial district and the events at issue occurred within this district.

4.     All conditions precedent to suit have been met. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued the Right to Sue on February 27, 2017.

## PARTIES

5.     Plaintiff Amira Black is a twenty-two year-old resident of Cook County, Illinois.

6.     Defendant Kandice Corporation d/b/a McDonald's is an Illinois corporation doing business in the State of Illinois operating several McDonald's franchise restaurants in the City of Chicago including that located at 7832 S. Western Avenue.

7.     Defendant Kyle Enterprises, Inc. d/b/a McDonald's is an Illinois corporation doing business in the State of Illinois operating several McDonald's franchise restaurants in the City of Chicago including that located at 7832 S. Western Avenue.

## FACTS

8.     On October 30, 2015, Amira was hired to work at Defendants' McDonald's restaurant located at 7832 S. Western Ave., Chicago, Illinois.

9.     Throughout Amira's employment with Defendants, she received satisfactory performance reviews and was frequently praised by her supervisors. At no time did Amira ever receive any disciplinary warnings or negative performance evaluations.

10.     Amira has autism, a developmental disability, which substantially limits her ability to learn, communicate, and interact with others.

11.     Due to her disability, Amira received employment coaching and services through Community Support Services (CSS), a non-profit organization that provides

services for individuals with developmental disabilities. CSS provided Amira with a vocational coordinator to assist her with finding employment and a vocational specialist (referred to as a "job coach") to support Amira on the job.

12.     On November 11, 2015, before Amira's first day at McDonald's, she and her CSS vocational coordinator met with the General Manager of the McDonald's restaurant where Amira would soon be working. They discussed Amira's disability and how the CSS program provides her with vocational support.

13.     At this meeting, Defendants' General Manager agreed to allow Amira to have her job coach at the worksite as a reasonable accommodation because of her disability.

14.     Amira's first day at McDonald's was November 19, 2015.

15.     To ensure a smooth transition, Amira's vocational coordinator and job coach both came with Amira on her first day of work. The vocational coordinator introduced the job coach to the General Manager, as well as another manager to whom she explained the vocational support program.

16.     Throughout Amira's employment at McDonald's, her job coach was regularly present at the McDonald's site and the vocational coordinator periodically checked in with the General Manager.

17.     On January 19, 2016, the General Manager provided an Employer Review for CCS, in which he gave Amira a positive report.

18.     On approximately January 20, 2016, Defendants' Human Resources Director Coneva Douglas called Amira's home and subsequently spoke to Amira's mother, Ms. Black, who returned Ms. Douglas's call.

19. Ms. Douglas's only contact with Amira had been at her interview on October 30, 2015, and during the orientation for all of the company's new hires on November 4, 2015.

20. During this telephone call on approximately January 20, 2016, Ms. Douglas told Ms. Black that she had received a complaint about someone being present at work with Amira. Ms. Black explained that the person present was Amira's job coach through the CSS vocational support program, which the General Manager had approved as an accommodation for Amira's disability.

21. Ms. Douglas responded that she was upset that she had not been told about Amira's disability or need for a job accommodation. Ms. Douglas specifically complained that Amira should have told her about her disability at the initial interview, before Ms. Douglas had hired her.

22. After speaking with Amira's mother, Ms. Douglas called Amira. They spoke shortly before Amira was scheduled to start work.

23. Ms. Douglas questioned Amira about her disability.

24. Ms. Douglas scolded Amira for not disclosing her disability during her initial interview, stating that Amira had not been truthful. Ms. Douglas repeatedly stated that Amira should have disclosed her disability prior to her hire.

25. Ms. Douglas stated that Amira would have to "turn in her uniform" because she had not disclosed her disability during the job interview and because of the complaint about someone being present in the store when Amira was working (*i.e.,* the job coach).

4

26. Amira was confused by the phone call with Ms. Douglas. Unsure of what to do, she spoke to her job coach and decided to go into work as scheduled.

27. Amira worked her normal shift the following day, January 21, 2016, and again on January 22 and 24, 2016.

28. While Amira was at work on January 24, 2016, the Assistant Manager called the Kandice Corporation's corporate office (for unrelated reasons) and mentioned Amira as being among the employees present. The corporate office told the Assistant Manager that Amira had been fired and should not be there.

29. The Assistant Manager told Amira that she was fired and had to leave.

30. Amira was terminated on the basis of disability in violation of the ADA.

## COUNT I: VIOLATION OF TITLE I OF THE ADA

31. Each of the above paragraphs, setting forth the factual allegations, is incorporated as if fully restated herein.

32. The ADA prohibits discrimination by an employer against a qualified individual with a disability in the terms and conditions of employment, including discharge, hiring and promotion. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4(a).

33. The ADA prohibits pre-employment inquiries about whether a job applicant has a disability, or the nature and extent of a disability. 42 U.S.C. § 12112(d)(4)(A).

34. The ADA requires an employer to provide a reasonable accommodation to a qualified individual with a disability to enable her to perform the essential functions of her job. 42 U.S.C. § 12112(b)(5); 29 C.F.R. § 1630.9.

35. Defendant Kandice Corporation d/b/a McDonald's is an "employer" under the ADA as it is engaged in an industry affecting commerce and has 15 or more employees. 42 U.S.C. § 12111(5)(A); 29 C.F.R. § 1630.2(e)(1).

36. Defendant Kyle Enterprises, Inc. d/b/a McDonald's is an "employer" under the ADA as it is engaged in an industry affecting commerce and has 15 or more employees. 42 U.S.C. § 12111(5)(A). 29 C.F.R. § 1630.2(e)(1).

37. Plaintiff is a person with a disability as defined by the ADA. Plaintiff has autism, a developmental disability. As a result of Plaintiff's autism, she is substantially limited in various major life activities related to executive functioning, including learning, communicating, and interacting with others.

38. Plaintiff was regarded as a person with a disability as defined by the ADA, as Defendants perceived Plaintiff to have the impairment of autism.

39. Plaintiff was a qualified individual because she had the skill, experience and ability to perform the essential functions of her job at McDonald's.

40. Defendants discriminated against Plaintiff in violation of the ADA when they terminated her employment because of her disability.

41. Defendants discriminated against Plaintiff in violation of the ADA by firing Plaintiff for failing to disclose her disability before being hired (something she was not required to do) and for using a reasonable accommodation on the job.

42. Defendants retaliated against Plaintiff in violation of the ADA when they terminated her employment because of her disability.

6

43. Defendants retaliated against Plaintiff in violation of the ADA by firing Plaintiff for failing to disclose her disability before being hired (something she was not required to do) and for using a reasonable accommodation on the job.

44. Defendants failed to engage in the "interactive process," a necessary prerequisite to denying and/or modifying reasonable accommodations for employees.

45. The above described unlawful employment practices were intentional, and Defendants acted with malice and reckless indifference to Plaintiff's rights.

46. As a result of Defendants' unlawful actions, Plaintiff suffered injuries, including, but not limited to, lost wages and emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendants for lost wages, compensatory and punitive damages, costs of this action, attorney's fees, and such other and additional relief as this Court deems equitable and just.

PLAINTIFF DEMANDS TRIAL BY JURY.

Dated: April 21, 2017

RESPECTFULLY SUBMITTED,


/s/ Amanda Antholt
One of the Attorneys for Plaintiff

Amanda Antholt
Rachel M. Weisberg
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, Illinois 60602
(312) 895-7330
(312) 341-0022
amanda@equipforequality.org
rachelw@equipforequality.org